# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



### CIVIL MINUTES - GENERAL

Case No. SACV 10-1414 DOC(RNBx)            Date: April 26, 2011

Title: CHRONIC TACOS ENTERPRISES, INC. v. CHRONIC TACOS HUNTINGTON BEACH, INC., ROB SLEENHOFF, and LOES SLEENHOFF

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|---|---|

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIMANTS' SECOND AMENDED COUNTERCLAIM

      Plaintiffs / Counterdefendants Chronic Tacos Enterprises, Inc., Randall Wyner, and Dan Biello (collectively, "Counterdefendants") bring the instant Motion to Dismiss Defendants / Counterclaimants Rob Sleenhof, Loes Sleenhof, and Chronic Tacos Huntington Beach, Inc.'s (collectively, "Counterclaimants") Second Amended Counterclaim ("Motion") (Docket 40).[1] The court finds this matter appropriate for decision without oral argument. Fed.R.Civ. P. 78; Local Rule 7-15. After considering the moving, opposing and replying papers, and for the reasons stated below, the Court hereby GRANTS in part and DENIES in part the Motion.

    **I.**     **BACKGROUND**

      The facts, according to Counterclaimants' Second Amended Counterclaim ("SACC"), are as follows. Chronic Tacos Enterprises, Inc. ("CTE") is the owner of the "Chronic Tacos" trademark

---

[1] Rob and Loes Sleenhof's last name is misspelled as Sleenhoff in Plaintiff / Counterdefendant's initial Complaint.

("CT Trademark"), registered with the Patent and Trademark Office ("PTO") on October 1, 2002. On or about June 2005, Counterdefendants Randall Wyner ("Wyner"), Dan Biello ("Biello"), and Counterclaimant Rob Sleenhof entered into an agreement to create Chronic Tacos Huntington Beach, Inc. ("CTHB") (the "Shareholder Agreement"). SACC ¶ 15. The Shareholder Agreement licensed the use of the CT Trademark to CTHB and specified that all shareholders must give notice of any intent to transfer shares and give the other shareholders the right of first refusal to purchase the shares. *Id*. at 16. Biello and Wyner presumably have a proprietary interest in the CT Trademark.

Between July 2009 and February 2010, Biello and Wyner allegedly transferred shares of CTHB without providing the necessary notice or right of first refusal to Counterclaimants. *Id*. Following these transfers, both Wyner and Biello ceased to be CTHB shareholders and terminated CTHB's temporary license. *Id*. at 17. Wyner and Biello subsequently offered to extend CTHB's license to use the CT Trademark if CTHB became a CTE franchise. *Id*. CTHB allegedly declined to sign a franchise agreement. *Id*.

Plaintiffs / Counterdefendants filed a Complaint in this Court on September 17, 2010, alleging (1) Trademark Infringement, 15 U.S.C. § 1114, (2) Lanham Act violation, (3) Common Law Trademark Infringement, and (4) Unfair Business Practices. In response to the Complaint, Defendants / Counterclaimants filed an Answer and Counterclaim on November 2, 2010. Counterclaimants filed a First Amended Counterclaim on March 10, 2010, asserting five causes of action: (1) Fraudulent Inducement, (2) Breach of Contract, (3) Conversion, (4) Declaratory Relief and Permanent Injunction, and (5) Unfair Competition. The first, fourth, and fifth causes of action were brought against CTE. The first, second, fourth, and fifth causes of action were brought against Wyner. All five causes of action were brought against Biello. In an Order dated February 22, 2011, the Court dismissed claims for Conversion and Permanent Injunction with prejudice and dismissed claims for Fraudulent Inducement and Unfair Competition with leave to amend. The Court declined to dismiss claims for Breach of Contract or Declaratory Relief. Counterclaimants filed a SACC on March 10, 2011, alleging (1) Fraudulent Inducement, (2) Breach of Contract, (3) Declaratory Relief, and (4) Common Law Unfair Competition (Docket 39). In response, Counterdefendants filed the instant Motion to dismiss the first and fourth causes of action.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable

for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In general, when ruling on a 12(b)(6) motion a court may not consider documents outside the pleadings. *See* Fed. R. Civ. P. 12(b). However, to show that the plaintiff has failed to state a claim a defendant may attach documents that are referred to in the complaint, if neither side questions the authenticity of the documents. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). A court may consider even documents not specifically or expressly referred to in the complaint if, as before, the authenticity of the document is not questioned and "the plaintiff's complaint necessarily relies" upon the document. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

### III. DISCUSSION

#### a. <u>Fraudulent Inducement</u>

In order to state a claim for fraudulent inducement, a party must allege (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). Counterdefendants argue that Counterclaimants fail to plead the elements of misrepresentation and justifiable reliance.

#### 1. Misrepresentation

Counterdefendants contend that the SACC's allegations of misrepresentation do not meet the pleading standards of Fed. R. Civ. P. 9(b) ("Rule 9(b)"). Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Rule 9(b) therefore requires that allegations of fraud identify the parties to each alleged misrepresentation such that each defendant is on notice of the specific conduct that forms the basis of the claim against them. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Here, Counterclaimants allege that Counterdefendants falsely represented that (1) "CTHB would always remain a 'corporate store' and would not be part of any franchise," (2) that CTHB would be allowed to use the CT Trademark for as long as the Sleenhofs desired, and (3) that "Counterdefendants would not transfer any shares of CTHB without first providing notice to other shareholders and allow Counterclaimants the right of first refusal." SACC ¶ 18-19.

As to the first alleged misrepresentation, the Court notes that CTHB is currently a corporate store and not a franchise. Complaint ¶ 2. Accordingly, Counterdefendants' assurance that CTHB would remain a corporate store does not appear to have been a misstatement. The Court declines to consider this alleged misrepresentation in its analysis. Counterclaimants' second allegation of misrepresentation, however, passes muster under Rule 9(b). The allegation includes supporting detail, such as the time and place of the misrepresentations. SACC ¶ 5 ("On or about April 2005, while at 1640 Superior Ave, Costa Mesa, CA 92627, Counterdefendants made the . . . false representations"). In addition, Counterclaimants express why these specific statements were misleading. *See In re Glen Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (stating,"[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false"), *superceded by statute on other grounds*. The SACC alleges that the Counterdefendants misrepresented that CTHB "could use the Chronic Tacos name, logo's, recipes, vendors and all other associated goods, services, and marks for as long as Rob Sleenhof and Loes Leenhof desired," when in fact Counterdefendants "intended to force CTHB to convert into a franchisee store" by "extinguishing CTHB's rights to the use of the Chronic Tacos name." SACC ¶ 19. The Counterclaimants also allege with particularity the circumstances of the third alleged misrepresentation. Counterclaimants state that in both the April 2005 discussions and the June 2005 Shareholder Agreement, Counterdefendants misled Counterclaimants as to their intent to provide "notice to other shareholders and allow Counterclaimants the right of first refusal" before selling shares of CTHB. *Id*.

### 2. Justifiable Reliance

Counterdefendants next argue that Counterclaimants fail to plead the element of justifiable reliance on all of the alleged misrepresentations.

In particular, Counterdefendants argue that Counterclaimants could not have justifiably relied on the alleged statement that CTHB could use the CT Trademark and its associated goods, services, recipes, and logos "for as long as Rob Sleenhof and Loes Sleenhof desired." Counterdefendants support their contention by pointing to Section 7.3 of the Shareholder Agreement, which states in relevant part:

> As an additional initial investment, and in consideration of the
> build-out investment of Sleenhof, Bielo and Wyner agree to

> license the rights to use the name "Chronic Tacos" . . . It is understood and agreed that this license shall be royalty free and is for use in this company in its operations only while Bielo and Wyner are shareholders therein and that no other Shareholder nor the company shall have, nor is intended to have, any other right to the intellectual property or use thereof.

SACC, Ex. A ¶ 11. Given that the Shareholder Agreement explicitly stated that the use of the CT Trademark could be revoked under certain circumstances, Counterdefendants argue that Counterclaimants cannot, in good faith, assert that Counterdefendants misrepresentated that Counterclaimants had unrestricted use of the CT Trademark and its associated benefits. Counterdefendants' Motion to Dismiss ¶ 8. Counterdefendants also submit that any statements made prior to the Shareholder Agreement cannot support justifiable reliance, as the Shareholder Agreement explicitly supercedes any such statements. *See* SACC, Ex. A ¶ 12. (providing in Section 8.1 that the Shareholder Agreement "constitutes the complete and exclusive agreement between the parties . . . and replaces and supercedes all prior and contemporaneous written or oral agreements or statements."). Indeed, the plain terms of the Shareholder Agreement contradict Counterclaimants' allegations. Counterclaimants thus fail to plausibly state the element of justifiable reliance on the second alleged misrepresentation.

Counterdefendants do not contest, however, that Counterclaimants offer sufficient allegations of justifiable reliance on Counterdefendants' third alleged misrepresentation: that "Counterdefendants would not transfer any shares of CTHB without first providing notice to other shareholders and allow Counterclaimants the right of first refusal." SACC ¶ 18-19. Given that the Shareholder Agreement expressly provides in Provision 5.1 that "[n]o Shareholder shall be entitled to transfer, assign, convey, sell, encumber, or in any way alienate all or any part of his or her Stock . . . except with the prior written consent of all Shareholders," the SACC plausibly alleges that Counterclaimants justifiably relied on this alleged misrepresentation. SACC, Ex. A ¶ 5.

Accordingly, the Court DENIES Counterdefendants' Motion to dismiss the claim for fraudulent inducement.

### b. Unfair Competition

Counterdefendants next move to dismiss Counterclaimants' cause of action for unfair competition under California common law. In order to state a claim for the tort of unfair competition under California law, the SACC must allege the following elements: "(1) that [Counterclaimants] had invested substantial time, skill or money in developing [their] property; (2) that [Counterdefendants] appropriated and used [Counterclaimants'] property at little or no cost; (3) that [Counterdefendants'] appropriation and use of [Counterclaimants'] property was without [their] authorization or consent . . . and (4) that [Counterclaimants] could establish that [they have] been injured by the

[Counterdefendants'] conduct." *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 842 (9th Cir. 2004). Counterdefendants contend that Counterclaimants not only fail to allege all of these required elements, but also, that Counterclaimants directly contradict their own assertions in the SACC. For these reasons, Counterdefendants contend that the SACC's factual allegations fail to suggest a plausible theory of liability. Counterdefendants' Motion to Dismiss ¶ 9.

The Court agrees with Counterdefendants. Counterclaimants allege that "Counterdefendants misappropriated and used CTHB at little or no cost to themselves by falsely representing to Chronic Taco's customers and putative Chronic Taco's franchisees that CTHB was a franchise store." SACC ¶ 23. But Counterclaimants also state in the SACC that they agreed with Counterdefendants to be joint stock holders in CTHB and to use the CT Trademark. SACC ¶ 15. Counterclaimants thus decided to use the CT Trademark and associate themselves with CTE. Moreover, since Counterdefendants were also co-owners of CTHB, they could not be said to have misappropriated the store. The SACC thus fails to plausibly allege how Counterdefendants could be liable for the tort of unfair competition.

Therefore, the Court GRANTS Counterdefendants' Motion to dismiss the claim for common law unfair competition. This claim is DISMISSED WITH PREJUDICE.

### IV. DISPOSITION

For the reasons set forth above, Counterdefendants' Motion to Dismiss is GRANTED as to the claim for common law unfair competition and DENIED as to the claim for fraudulent inducement. The common law unfair competition claim is DISMISSED WITH PREJUDICE.

The Clerk shall serve this minute order on all parties to the action.